DECISION AND JUDGMENT ENTRY
This is an appeal from a July 26, 1999 judgment entry of the Lucas County Court of Common Pleas, Juvenile Division, in which the court terminated the parental rights of appellant, Geneva M., to two of her children, Lea M. and Kia M., and awarded appellee, Lucas County Children's Services ("LCCS"), permanent custody of the children. Appellant has presented two assignments of error for consideration on appeal. The assignments of error are:
 "1. DID THE TRIAL COURT ERR IN FINDING THAT THE LUCAS COUNTY CHILDREN SERVICES BOARD MET IT'S [SIC] BURDEN OF PROOF BY CLEAR AND CONVINCING EVIDENCE THAT IT HAD PROVIDED THE REQUIREMENTS MANDATED, PURSUANT TO R.C. 2151.414(e)(1)(2), AND THAT DILIGENT EFFORTS HAD BEEN MADE?
 "2. WAS THE TRIAL COURT'S FINDING OF A GRANT OF PERMANENT CUSTODY BASED UPON LUCAS COUNTY CHILDREN SERVICES ASSERTION THAT IT HAD SATISFIED THE REQUIREMENTS OF R.C. 2151.414(e) (1) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE?"
Pursuant to R.C. 2151.414(B) the trial court could grant permanent custody of Lea and Kia to LCCS if the court found, by clear and convincing evidence, that (1) it is in the best interest of Lea and Kia to grant permanent custody to LCCS and (2) Lea and Kia cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E) states, in pertinent part:
 "If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, * * * or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
"(10) The parent has abandoned the child."
The Supreme Court of Ohio has explained that "clear and convincing" is that level of evidence which is sufficient to establish in the mind of the trier of fact a "firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. Accordingly, we must review the record to see if it contains clear and convincing evidence to support the trial court's ruling in this case.
This case began when a magistrate in the Lucas County Court of Common Pleas, Domestic Division, granted a motion from LCCS for emergency shelter care of appellant's children on October 7, 1997, and ordered appellant to have substance abuse treatment. On that same date, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing.
On November 3, 1997, LCCS filed a case plan. The stated goal of the plan was to reunite appellant with her children. The plan to meet the goal included referring appellant for drug treatment.
On January 13, 1998, the trial court granted temporary custody of appellant's children to LCCS, effective December 5, 1997, after appellant stipulated to the facts contained in the complaint in dependency and neglect filed by LCCS and consented to a finding that her children were dependent and neglected. The facts contained in the complaint showed that LCCS received two referrals before it opened a case file and sought temporary custody of the children. The reason for each of the referrals was that appellant was using crack cocaine and was not providing her children with the necessities of life such as food, and a home with the basic utility services of water, gas and electric service.
In August 1998, LCCS filed a case plan with a change in the plan goal. The goal now stated with regard to Lea and Kia was to grant permanent custody of them to LCCS so they could be placed for adoption. In September 1998, LCCS filed a motion for permanent custody pursuant to R.C. 2151.353(B) and R.C. 2151.414. The trial court held hearings on the motion, and on July 6, 1999, it filed the judgment entry granting LCCS permanent custody of Lea and Kia.[1] Appellant is appealing that decision.
Appellant appears to be arguing in support of her first assignment of error that she could not achieve and maintain sobriety from her alcohol and cocaine addictions and therefore could not successfully complete her part of the case plan to reunite her with her children because LCCS did not ensure that she got appropriate treatment for her addictions. Specifically, she is arguing that she should have received long-term inpatient treatment for her addictions. She says there is no clear and convincing evidence to show that LCCS used reasonable case planning and diligent efforts to help her remedy the cause for the removal of her children from her home.
LCCS responds that the record shows that it did use reasonable case planning and made diligent efforts to help appellant overcome her addictions to alcohol and cocaine. LCCS points out that it made several referrals for appellant to different drug addiction treatment programs and appellant repeatedly was discharged from the programs for failing to comply with treatment plans. Only after appellant failed to make any progress on her addiction problem for more than a year did LCCS file for permanent custody of the children.
We have carefully reviewed the transcript from the dispositional hearing and the full record, and we agree with appellee that the record shows LCCS did use reasonable planning and did use diligent effort to help appellant remedy the problem that caused the removal of the children from her home. The trial court heard testimony from: 1) the director of outpatient services at Compass, a rehabilitation facility for adults with addictive disorders; 2) a certified chemical dependency counselor from Substance Abuse Services Incorporated ("SASI"); 3) a second employee from SASI who conducted a separate assessment of appellant; 4) the woman's intensive outpatient counselor from SASI; 5) the medical director of Rescue Crisis Center; and 6) the program manager of the dual diagnosis program for Unison Behavioral Health which treats both mental illness and chemical dependency problems. The testimony of the above witnesses showed that appellant had a pattern of initially completing inpatient programs, and then not following through with the treatment plans established for her as an outpatient. She was discharged from each of the programs, because she would miss appointments, did not follow through with recommendations, and was disruptive on occasion.[2]
In addition, the trial court heard the testimony of the caseworker from LCCS who worked with appellant from July 1997. He testified that he kept referring appellant to programs designed to help people with drug addiction programs. He said appellant went through ten variations of inpatient and outpatient treatment programs and did achieve sobriety for short periods of time, but she kept going back to drug and alcohol abuse.
He said appellant did not consistently visit her children, and that she would sometimes bring five or six other people with her during visitation. On other occasions she would be out of town during her scheduled visitation time, and thought it was sufficient to call her children and talk to them on the phone rather than appear in person or reschedule the time for visitation.
He testified that he tried to find relatives of appellant who were willing and able to take custody of the children, but none of the relatives who were willing to take the children were suitable. He said the fathers of Lea and Kia could not be found, and apparently had never been involved in the care of their children. He said he believed it was in the best interest of the girls to grant permanent custody to LCCS so they could be placed for adoption because he did not believe appellant was any closer to solving her addiction problems than when the case plan first started, and he believed the children needed some certainty about where they would live and who would care for them.
Finally, the guardian ad litem recommended that the trial court grant LCCS permanent custody of the children. The regular reports she filed with the court showed she did talk with the parties involved in the placement and care of the children as well as with the children themselves and that her investigations led her to the recommendation she made at the hearing.
All of the information presented by the witnesses at the dispositional hearing show that LCCS did keep trying to help appellant address her addiction problems and did keep referring her to treatment programs. The programs did admit appellant for inpatient treatment, but no witness said they recommended appellant have long term inpatient treatment. Once appellant completed the inpatient treatment programs, she was moved to outpatient treatment and appellant herself failed to follow the treatment guidelines in those programs, resulting in her loss of sobriety and ultimately in her discharge from those programs.
Furthermore, the testimony of the witnesses provided clear and convincing evidence to support the findings of the trial court that awarding permanent custody of the children to LCCS was in the best interest of the children. The testimony of the witnesses also provided clear and convincing evidence that despite a reasonable case plan and diligent effort on the part of LCCS to assist her, appellant had not remedied the problem that initially caused the removal of her children from her home, that she had an ongoing chemical dependency problem and that the children should not or could not be returned to her care within a reasonable period of time. Accordingly, appellant's first assignment of error is not well-taken.
In support of her second assignment of error, appellant argues that the trial court did not consider the factors listed in R.C. 2151.414(E)(1) and (2) when it terminated her parental rights. She says the trial court only based its decision on her failure to make any positive progress on her addiction problems during the three months before the dispositional hearing.
We find no support in the record for appellant's assertion. While the trial court did make remarks at the close of the dispositional hearing regarding disappointment that appellant had not made any progress on overcoming her addiction problems during the last few months before the hearing, the remarks were part of a statement made by the trial court to explain that it believed in giving people "second chances" but that appellant did not take advantage of the many chances she was given to overcome her addictions, including a three month delay in conducting the dispositional hearing. When all of the trial court's remarks and its judgment are reviewed, it is clear that the trial court did find that the evidence showed appellant did not remedy the problem that caused the removal of her children from her home even though LCCS used reasonable case planning and diligent efforts to help her overcome her addictions. The trial court did consider whether the evidence presented in the case met the statutory factors found in R.C.2151.414(E)(1) and (2) and terminated appellant's parental rights after it ruled that the factors were met. Appellant's second assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
 ____________________________ Peter M. Handwork, J., JUDGE
 Richard W. Knepper, P.J., Mark L. Pietrykowski, J. JUDGES CONCUR.
[1] Appellant had a third daughter who was also removed from her home at the same time Lea and Kia were removed. With appellant's consent, the father of that daughter was awarded custody of that daughter, and she went to live with him out of state. She is therefore not a subject of this appeal.
[2] Appellant completed residential treatment at SASI and was referred to extended care. She was discharged from SASI on April 2, 1998 because she did not follow through with extended care.
Appellant was discharged from Compass on August 8, 1998 because she did not follow the plan to live in a halfway house while completing outpatient care after her inpatient treatment at Compass ended.
Appellant was reassessed at SASI on September 23, 1998. SASI recommended that she enroll in an intensive outpatient program. She did enroll, but was discharged on October 8, 1998 after she missed three of six group sessions and missed two of two individual counseling sessions.
Appellant enrolled in an intensive outpatient program at the Unison Behavioral Health program in February 1999. She was discharged on May 27, 1999 because she was disruptive in group sessions when she did attend, and because she did not appear for most of the sessions or individual appointments.